STEPHEN KOTEFF, NO. 9407070
JOSHUA A. DECKER, NO. 1201001
ACLU OF ALASKA FOUNDATION
1057 W. FIREWEED LANE, STE. 207
ANCHORAGE, AK 99503
(907) 263-2007
*skoteff@acluak.org*

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | | |
|---|---|---|
| ANTHONY L. BLANFORD and JOHN K. BELLVILLE, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:19-cv-00036-JWS |
| v. | ) ) ) | |
| MICHAEL J. DUNLEAVY, in his individual and official capacities; TUCKERMAN BABCOCK; and the STATE OF ALASKA, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Anthony L. Blanford and John K. Bellville move for summary judgment on their claims that Defendants violated their rights under the First Amendment of the United States Constitution and Article I, § 5, of the Alaska Constitution. The material facts supporting these claims are not in dispute, and Plaintiffs are entitled to judgment as a matter of law in accordance with Federal Rule of Civil Procedure 56(a).

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 1 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 1 of 38

# INTRODUCTION

Anthony Blanford and John Bellville were psychiatrists who worked for the State of Alaska at the Alaska Psychiatric Institute. Both doctors came to API because of their dedication to the mentally ill and because of their desire to serve the public good. Neither was hired because of their political loyalties, and neither worked in what is known as a "policymaking" position. Yet, both doctors were compelled to offer their resignations and pledge their support for Governor Dunleavy's political agenda soon after he was elected to office. When they refused, they were fired.

This case raises the question of whether a political figure, once elected to higher executive office, can constitutionally compel a statement of allegiance to his partisan agenda from all at-will public employees and, for those non-policymaking employees who refuse, whether he can constitutionally fire them when they do not comply. As this Motion explains, the answer is, decidedly, that he may not.

# FACTUAL BACKGROUND

On November 6, 2018, Michael J. Dunleavy was elected as Governor of the State of Alaska. Shortly thereafter the Governor-elect announced that Tuckerman Babcock would serve as his chief of staff and as the chair of his transition team. As was to be expected, the new

ACLU of ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

governor and his chief of staff would seek to replace certain higher-level administration officials working under then-Governor Bill Walker. But the following week, in an unexpected and extraordinary step, Mr. Babcock sent a memorandum to almost all at-will State of Alaska employees demanding their resignations by November 30. Ex. 1 (Memorandum from Tuckerman Babcock re "Request for Resignation," November 16, 2018).

This far-reaching demand was met with widespread anxiety and confusion. Ex. 2, at 2 (Email from Leslie Ridle, Nov. 19. 2018). The memorandum advises employees that "the incoming administration will be making numerous personnel decisions" and that Mr. Dunleavy "is committed to bringing his own brand of energy and direction to state government." Ex. 1. Although the memorandum stated that acceptance of resignations would "not be automatic," it made clear that an employee's "statement of interest in continuing" in their position would be considered. *Id.* The demand was accompanied by a form for each employee to use when submitting their resignation, which includes the statement, "I [have] [have not] submitted my name for consideration for my current position to continue with the new administration." Ex. 3 (Resignation Form).

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

When asked about the resignation demand the day after it was issued, Mr. Babcock said that then-Governor-elect Dunleavy "just wants all of the state employees who are at-will . . . to affirmatively say, 'Yes, I want to work for the Dunleavy administration.'" Ex. 4 (Annie Zak, *Dunleavy team asks all at-will state workers for resignations*, Anchorage Daily News, Nov. 16, 2018) at 2.[1] Mr. Babcock made clear that the message intended by the resignation demand was, "'Do you want to work on this agenda, do you want to work in this administration?' Just let us know." *Id.* Mr. Dunleavy echoed Mr. Babcock's description of the resignation requests, saying they were meant "to give people an opportunity to think about whether they want to remain with this administration . . . ." *Id.*

Further clarifying, Mr. Babcock said "I do think this is something bold and different, and it's not meant to intimidate or scare anybody. It's meant to say, 'Do you want to be part of this?'" *Id.* At the same time, Mr. Babcock left no mistake that there would be significant consequences for anyone who did not comply with the demand. Any state employee who refused or failed to offer her or his resignation would be fired: "If you don't want to express a positive desire, just don't

---

[1] Also available at: https://www.adn.com/politics/2018/11/17/dunleavy-team-asks-all-at-will-state-workers-for-resignations/.

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

submit your letter of resignation," Mr. Babcock said. "And then you've let us know you just wish to be terminated." *Id.* at 3.

The sweeping scope of the resignation demand was unprecedented. The governor-elect's spokesperson, Sarah Erkmann Ward, admitted that Mr. Dunleavy had "broadened the scope of which employees" could be subject to summary dismissal, something that "typically had not been done" before. *Id.* at 2. In past years, incoming administrations ordinarily requested resignations from roughly 250 policymaking employees. *Id.*; *see also* Ex. 5 (Letter from Senator Bill Wielechowski, *et al.,* to Governor-elect Mike Dunleavy, Nov. 27. 2018) at 2. Mr. Babcock's memorandum, however, was issued to more than 800 State of Alaska employees. Ex. 6 ("Resignation Memo Sent List"). These state workers were considered to have "at will" status because they were designated as "exempt" or "partially exempt" employees. *Id.*

Because of its unprecedented nature, the demand for resignations received significant media attention. *See, e.g.,* Ex. 4; Ex. 7 (Alex DeMarban, *Walker team 'strongly' objects as Dunleavy transition asks all at-will Alaska state workers for resignation letters,* Anchorage Daily

News, Nov. 17, 2018);[2] Ex. 8 (Kyle Hopkins, *Dunleavy chief of staff: 'No public servant should ever think that they are irreplaceable,'* Anchorage Daily News, Nov. 18, 2018).[3] Many, including members of the Alaska legislature, were critical of the governor's insistence on "a demonstration of loyalty," pointing out that the resignation demand was sent to "medical doctors, psychiatrists, pharmacists, fiscal analysts, state tax code specialists, investment managers, petroleum geologists, trust managers, accountants, research analysts, IT professionals, loan officers, military & veterans affairs coordinators, marine transportation managers, administrative law judges, and state attorneys presently working on behalf of the public on important and complicated legal issues, including prosecutors on criminal cases." Ex. 5 at 1. As these legislators recognized, "[t]he functions of these employees are not political. They serve the state's needs and its greater good." *Id.*

Two such employees were the Plaintiffs in this case, Dr. Anthony Blanford and Dr. John Bellville. In November 2018, Dr. Blanford was

---

[2] Also available at: https://www.adn.com/politics/2018/11/18/governors-team-resisted-as-dunleavy-team-asks-all-at-will-alaska-state-workers-for-resignations/

[3] Also available at: https://www.adn.com/politics/2018/11/20/dunleavy-chief-of-staff-no-public-servant-should-ever-think-that-they-are-irreplaceable/

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 6 of 38

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

employed as the chief of psychiatry, and Dr. Bellville as a staff psychiatrist, at the Alaska Psychiatric Institute, the State's psychiatric hospital. Dr. Blanford was first hired in 2016 as a staff psychiatrist, Ex. 9, and was later promoted, first, on an interim basis, and then permanently, to the chief of psychiatry position. Ex. 10; Ex. 11. Dr. Bellville joined API more recently, in the spring of 2018. Ex. 12. Both were considered to be "excellent psychiatrists." Ex. 13 (Deposition of Gavin Carmichael (excerpted)) at 8 (Tr. 59:12-16).

Both doctors joined API because of their commitments to their professions. Ex. 14 (Declaration of Anthony L. Blanford), ¶ 5; Ex.15 (Declaration of John K. Bellville), ¶ 4. When each doctor was hired, he was required to sign an "Oath of Office" stating: "I do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of Alaska, and that I will faithfully discharge my duties as a psychiatrist to the best of my ability." Ex. 16; Ex. 17. Dr. Blanford took this oath a second time when he was promoted to chief of psychiatry. Ex. 18. Neither doctor was ever told that, beyond this oath, any type of loyalty or allegiance was required for them to work as psychiatrists at API. Ex. 14, ¶ 6; Ex. 15 ¶¶ 5. Both doctors were required to read and acknowledge a number of policies applicable to their jobs, but none of those policies suggests that

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 7 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 7 of 38

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

either of their positions was partisan in any way. Ex. 19; Ex. 20. And neither doctor understood their job to be political based on their respective experiences in their positions. Ex. 14, ¶¶ 7-8; Ex. 15 ¶¶ 6-7.

Consequently, both doctors were surprised to find themselves recipients of Mr. Babcock's resignation demand. The next day, when Dr. Blanford read the statements made by Mr. Babcock about the resignation demand in the Anchorage Daily News, he was upset and offended about being asked to take a political stand in to keep his job. Ex. 14, ¶ 13. He determined that he would not pledge himself to the governor-elect's political agenda and resolved not to submit his resignation. *Id.* That night, Dr. Blanford wrote a letter to the editor of the Anchorage Daily News to explain why he would not resign. *Id.* ¶ 14; Ex. 21 (*Letter: I will not resign*, Anchorage Daily News, Nov. 19, 2018).[4] In it, he articulated what many surely felt: that "[t]he State of Alaska hired me for my expertise, not my political allegiance," adding that the "symbolic gesture of deference" he was being asked to perform didn't "settle well" with him. *Id.*

When Dr. Bellville received the memorandum, he thought it was a mistake and simply ignored it. Ex. 15, ¶ 8. A few days later, however,

---

[4] Also available at:
ttps://www.adn.com/opinions/letters/2018/11/19/letter-i-will-not-resign/

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS

Dr. Blanford called a staff meeting to discuss his letter to the editor, and to let other API staff know that "they were free to take their own position on the matter." Ex. 14, ¶ 15. After attending this meeting and reading about the controversial nature of the demand in the media, Dr. Bellville came to his own conclusion and resolved not to resign. Ex. 15, ¶¶ 10-13. Dr. Bellville believed it was unjust "for anyone to insist on a declaration of political allegiance from someone in [his] position under the threat of having their job terminated." *Id.*, ¶ 10.

Both doctors also explained their opposition to Gavin Carmichael, who was then the API chief executive officer and their superior. "They said: 'Well, look, Gavin, . . . our Hippocratic oath was to take care of patients. We did not sign on to the governor. Nobody said we've got to sign a pledge or anything at the time when we had the last governor in office.'" Ex. 13 at 5 (Tr. 37:14-20). To Mr. Carmichael, it was obvious that Drs. Blanford and Bellville regarded the Babcock demand as a loyalty oath. "That was the interpretation, I believe. . . . They believed it was an oath of some sort, right." *Id.* at 6 (Tr. 41:3-7). And Mr. Carmichael agreed with them: "You know, . . . [t]hey're absolutely right". *Id.* (Tr. 41:11-13). "I have to say I didn't think of it 100 percent as a loyalty pledge. I saw it as an alignment document . . . ." *Id.* at 7 (Tr. 42:22-24).

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 9 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 9 of 38

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

Mr. Babcock's November 30 resignation deadline passed without either doctor submitting his resignation. On the morning of December 3, 2018, little more than two hours before Governor Dunleavy was sworn in, Mr. Babcock fired both Dr. Blanford and Dr. Bellville. Ex. 22; Ex. 23. Mr. Babcock's firing notices do not give reasons for the terminations; however, Defendants' subsequently confirmed that the only reason for the doctors' firings was because each "failed to respond to the 'Resignation Request Memorandum.'" Ex. 24 (Defendants' Response to Interrogatory Nos. 2 and 3) at 4.

Almost immediately after Drs. Blanford and Bellville were fired, Adam Crum, the Department of Health and Social Services commissioner, and Albert Wall, the department's deputy commissioner, convened a meeting with the doctors to try to get them "consider staying with the new administration" and to change their minds about "submitting a letter of interest to remain in their positions . . . ." Ex. 25 (Deposition of Albert Wall (excerpted)) at 5-9 (Tr.19:23-22:1, 24:20-23). But neither doctor would change his mind and each stood firm in his convictions. Each understood that they were being asked to do the same thing in this meeting that they had already refused to do. Ex. 14, ¶ 20; Ex. 15, ¶ 18. As Mr. Wall described it, Drs. Blanford and Bellville objected to being required to express any intent to work with the new

ACLU of ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 10 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 10 of 38

administration because "they serve whoever walks into the work regardless of political affiliation and did not see that as part of their— as a professional need for what their work included." Ex. 25 at 10 (Tr. 25:6-9).

## ARGUMENT

Plaintiffs are entitled to summary judgment on their claims that Defendants violated their rights under the First Amendment of the United States Constitution and Article I, § 5 of the Alaska Constitution when Defendants terminated their employment because Plaintiffs refused to engage in compelled speech expressing their allegiance to Defendants' political brand of government. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

The undisputed facts "show (1) that [Plaintiffs] engaged in protected speech; (2) that [Defendants] took "adverse employment action"; and (3) that [Plaintiffs'] speech was a "substantial or motivating" factor for the adverse employment action. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Ordinarily, such a showing

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS

would shift the burden to a public employer to demonstrate the employee would have been fired even if the protected activity had not occurred. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287 (1977). But in this case, where the Defendants motives for terminating the Plaintiffs' employment are not in dispute, the "dispositive point . . . is that the conduct for which the [Plaintiffs were fired] *was* lawful and may *not* constitute the basis for firing." *Snyder v. Freight, Const., Gen. Drivers, Warehousemen & Helpers, Loc. No. 287*, 175 F.3d 680, 686 (9th Cir. 1999), *amended,* (9th Cir. June 3, 1999).

Whether Plaintiffs engaged in protected speech is a matter of law. *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). Courts consider the "content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147–48. Courts also consider the "public or private nature of the speech," as well as "the speaker's motive," although no one factor is controlling. *Wks. v. Bayer*, 246 F.3d 1231, 1235 (9th Cir. 2001).

## A. The First Amendment of the United States Constitution Prohibits Government Officials from Compelling Citizens to Engage in Political Speech

The First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

It has long been established that this bedrock constitutional principle means not only that a person has a right to free speech, but also that the government cannot compel its citizens to speak. For almost seventy years, it has been clearly understood that requiring an "individual to communicate by word and sign his acceptance of the political ideas" advanced by a public body violates the right to free speech. *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 631 (1943). "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Id.*

Thus, "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Put another way, the "First Amendment protects the right of individuals to . . . refuse to foster" ideas advanced by the state that "they find morally objectionable." *Id.* at 715.

In accordance with these principles, courts have routinely struck down government attempts to compel speech on controversial issues. In *Barnette*, the Supreme Court held that a school district could not compel its students and teachers to recite aloud the Pledge of

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 13 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 13 of 38

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

Allegiance. 319 U.S. at 631. In *Wooley v. Maynard,* the Court invalidated a New Hampshire law requiring passenger vehicles to display license plates with the motto "Live Free or Die." 430 U.S. at 715. And in *Baird v. State Bar of Arizona*, 401 U.S. 1 (1971), the Court held that the First Amendment prohibits a state bar from requiring an applicant "to state whether she had ever been a member of the Communist Party or any organization 'that advocates the overthrow of the United States Government by force or violence.'" *Id.* at 4–5. The *Baird* Court concluded: "[W]hen a State attempts to make inquiries about a person's beliefs or associations, its power is limited by the First Amendment. Broad and sweeping state inquiries into these protected areas . . . discourage citizens from exercising rights protected by the Constitution." *Id.* at 6.

The Supreme Court has also held, time and again, that a government "may not deny [public employment] to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (citing cases). In one such line of cases, the Court has made clear that the State may not condition employment "on an oath that one has not engaged, or will not engage, in protected speech activities" or "associational activities within constitutional protection." *Cole v.*

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 14 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 14 of 38

*Richardson*, 405 U.S. 676, 680 (1972). Such "loyalty oaths" may seek a person's affirmation that they will support the Constitution, but they violate the First Amendment if they require adherence to a particular message. *See id. See also see also Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,* 570 U.S. 205, 217–18 (2013) (government may not condition receipt of federal funds on recipient's adoption a policy opposing prostitution).

A more recent case in which the Supreme Court applied the First Amendment right not to speak in the public employment context is *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018). In *Janus*, the Court held that compelling public employees to *subsidize* speech with which they did not agree violates the First Amendment just as much as if those employees were compelled to speak. *Id.* at 2464. In reaching its holding, the Court spoke directly to the situation now presented in this case:

> Compelling individuals to mouth support for views they find objectionable violates [the] cardinal constitutional command [of *Barnette*], and in most contexts, any such effort would be universally condemned. Suppose, for example, that the State of Illinois required all residents to sign a document expressing support for a particular set of positions on controversial public issues—say, the platform of one of the major political parties. No one, we trust, would seriously argue that the First Amendment permits this.

*Id.* at 2463–64.

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 15 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 15 of 38

ACLU of ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

ACLU of ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

For these reasons, "measures compelling speech are at least as threatening" as those that restrict it. *Id.* at 2464. When a state "compels [individuals] to voice ideas with which they disagree, it undermines" the basic end of the First Amendment's free speech guarantee. *Id.* But when speech is compelled, "additional damage is done. In that situation, individuals are coerced into betraying their convictions. Forcing free and independent individuals to endorse ideas they find objectionable is always demeaning . . . ." *Id.*

Closely aligned with the rule prohibiting compelled political speech is another line of cases under *Perry v. Sindermann* establishing First Amendment protections for political affiliation or association. Thus, "[g]overnment officials may not discharge public employees for refusing to support a political party or its candidates, unless political affiliation is a reasonably appropriate requirement for the job in question." *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 714 (1996). This now-central tenet of First Amendment law has been repeatedly recognized in case after case by the United States Supreme Court and the courts of this Circuit. In *Elrod v. Burns*, 427 U.S. 347, 359 (1976), the Supreme Court held that a threat of firing for an employee's failure to provide political support "unquestionably inhibits protected belief and association, and dismissal for failure to provide

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS

support only penalizes its exercise." Likewise, in *Branti v. Finkel*, 445 U.S. 507, 515 (1980), the Court held that firing a public employee for refusing a request for political and financial support imposes an unconstitutional condition on government employment. And the Ninth Circuit in several cases has said that the First Amendment "prohibits an elected official from firing or retaliating against an employee for his political opinions, memberships, or activities." *Hunt v. Cty. of Orange*, 672 F.3d 606, 611 (9th Cir. 2012); *Bardzik v. Cty. of Orange*, 635 F.3d 1138, 1144 (9th Cir. 2011); *DiRuzza v. Cty. of Tehama*, 206 F.3d 1304, 1308 (9th Cir. 2000).

### B. Article I, § 5, of the Alaska Constitution Also Prohibits Government-Compelled Political Speech

The Alaska Constitution is at least as protective, and oftentimes more, of fundamental rights guaranteed by the U.S. Constitution. *See Club Sinrock, LLC v. Municipality of Anchorage*, 445 P.3d 1031, 1037 (Alaska 2019) ("Alaska's constitutional heritage may require individual protections over and above federal guarantees.") That is particularly true with respect to freedom of speech and association: the Alaska Constitution offers broader rights protection than the federal constitution. *Id.* at 1037-38; *Alaskans for a Common Language v. Kritz*, 170 P.3d 183, 198 (Alaska 2007); *Wickwire v. State*, 725 P.2d 695, 703

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Page 17 of 35
Case No. 3:19-cv-00036-JWS

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 17 of 38

(Alaska 1986); *Vogler v. Miller*, 651 P.2d 1, 3–6 (Alaska 1982); and

*Breese v. Smith*, 501 P.2d 159, 166–72 (Alaska 1972). Article I, § 5 of

the Alaska Constitution provides that "[e]very person may freely speak,

write, and publish on all subjects, being responsible for the abuse of

that right."

The Alaska Supreme Court has not decided a case in which a

public employee exercised their right not to speak in the face of

government compulsion to do so. But the Court has held, consistent

with *Pickering v. Bd. Education*, 391 U.S. 563 (1968), that government

employers may limit the First Amendment rights of public employees

only if they can demonstrate that a legitimate interest in promoting

operational efficiency outweighs the employee's interest in commenting

on matters of public concern. *City and Borough of Sitka v. Swanner*,

649 P.2d 940, 943 (Alaska 1982). In *Swanner*, a police captain alleged

that he had been discharged in violation of First Amendment rights

after he published a letter critical of his police department's

procedures. *Id.* at 942–43. The Court found that the employer failed to

show that the captain's speech "interfered with the discharge of his

duties and responsibilities" in a substantial or material way. *Id.* at 944.

Similarly, in *State v. Haley*, 687 P.2d 305 (Alaska 1984), a case

decided under the First Amendment and Article 1, § 5, of the Alaska

ACLU of ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

Constitution, the Court held that the State failed to show that a legislative researcher's public opinions on multinational corporations "materially and substantially disrupted her working relationship" with the legislators with whom she worked. *Id.* at 313. And in *Wickwire v. State*, 725 P.2d 695 (Alaska 1986), the Court affirmed its holdings in *Swanner* and *Haley* that a government employer may infringe on an employee's First Amendment rights only "'if it can demonstrate that its legitimate interest in promoting efficiency in its operation outweighs the interests of the employee in commenting upon matters of public concern.'" *Id.* at 700 (quoting *Swanner,* 649 P.2d at 943). Notably, the *Wickwire* Court observed "that there may be instances where we would find that certain speech addressed a matter of public concern and was protected under Alaska's Constitution even though a federal claim might yield a contrary result." *Id.* at 703.

These cases demonstrate that free speech rights under the Alaska Constitution are guaranteed at least as much as they are under the First Amendment, and in some cases, even more so. Accordingly, Defendants' violations of Plaintiff's First Amendment rights in this case are every bit as much violations of their rights under Article I, § 5, of the Alaska Constitution.

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 19 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 19 of 38

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

### C. Tuckerman Babcock's Demand for Resignations Unconstitutionally Compelled Political Speech

When Tuckerman Babcock demanded the resignations of a wide swath of public employees, he unquestionably sought to compel speech in support of Governor-elect Dunleavy's political agenda. The demand sought to elicit, on pain of termination, a pledge of loyalty from every at-will employee on the pretext that it was "routine" for new administrations to issue such requests. But the undisputed facts show that it was anything but routine, and the transparent political nature of the demand is evident in its content and context. *Connick v. Myers*, 461 U.S. 138, 147–48 (1983) (It is the "content, form, and context of a given statement, as revealed by the whole record," that determines it political nature).

Mr. Babcock's November 16, 2018, memorandum explicitly states that Governor-elect Dunleavy intended to bring "*his own brand of energy and direction* to state government." Ex. 1 (emphasis added). The memorandum goes on to say that, while resignations would not be automatically accepted, "consideration [would] be given" to each employee's "statement of interest in continuing" in their position." *Id.* The template Mr. Babcock supplied for offering resignations includes a line for the employee to state whether they have "submitted [their]

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 20 of 35

name for consideration for [their] current position to continue *with the new administration*." Ex. 3 (emphasis added).

Babcock's memorandum received significant media attention. The day after the memorandum was first sent, Mr. Babcock publicly announced that then-Governor-elect Dunleavy "just wants all of the state employees who are at-will . . . to affirmatively say, 'Yes, I want to work for the *Dunleavy administration*.'" Ex. 4 at 2. Mr. Babcock made clear that the message intended by the resignation demand was, "'Do you want to work on *this agenda*, do you want to work *in this administration*?' Just let us know." *Id.* (emphasis added).

Mr. Dunleavy repeated Mr. Babcock's description of the resignation requests, saying they were meant "to give people an opportunity to think about whether they want to remain *with this administration* . . . ." *Id.* (emphasis added) Couched in these terms, with specific references to "this agenda" and "this administration," the message was unmistakable: more than 800 State of Alaska employees needed to affirm that they supported the political goals of the Governor-elect.

Mr. Babcock also said "I do think this is something bold and different, and it's not meant to intimidate or scare anybody. It's meant to say, 'Do you want to be part of this?'" *Id.* At the same time, he

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 21 of 35

Case 3:19-cv-00036-JWS    Document 54    Filed 04/09/21    Page 21 of 38

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

announced that any state employee who refused or failed to offer her or his resignation would be fired: "If you don't want to express a positive desire, just don't submit your letter of resignation," he said. "And then you've let us know you just wish to be terminated."

This demand, that a large number of public employees were compelled to meet, went far beyond the straightforward oath that Alaska state officials and employees are required to take upon assuming their duties. That oath, which Drs. Blanford and Bellville both signed, asks no more that allegiance to the Constitution of the United States and the Constitution of the State of Alaska, and contains of an unremarkable promise to "faithfully discharge" one's duties. Ex. 16, Ex. 17. Such oaths have been routinely upheld by the United States Supreme Court. *E.g., Cole v. Richardson*, 405 U.S. 679 (1972).

But the Court has struck down more intrusive oaths that curtail First or Fourteenth Amendment rights "as for example those relating to political beliefs," *id.* at 680, as well as those that condition employment on past or future associational activities protected by the Constitution. *Id.* (citing cases). Particularly egregious are those demands that seek to "penalize political beliefs." *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 54 (1961) (citing *Speiser v. Randall*, 357 U.S.

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 22 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 22 of 38

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

513, 518 (1958)) (tax exemption denial to those who engage in certain forms of speech is in effect to penalize them for such speech).

Thus, in *Baird v. State Bar of Arizona*, 401 U.S. 1 (1971), the Court held that the First Amendment prohibits a state bar from requiring an applicant "to state whether she had ever been a member of the Communist Party or any organization 'that advocates the overthrow of the United States Government by force or violence.'" *Id.* at 4–5. The Ninth Circuit has interpreted *Baird* to mean that "[t]he state may not subject a person to a civil disability for mere membership in a particular organization; at most, it may do so for membership in a subversive organization with knowledge of its unlawful purposes and specific intent to further those purposes." *Cummings v. Hampton*, 485 F.2d 1153, 1154 (9th Cir. 1973). But even these more limited inquiries must be justified by "a legitimate state interest." *Id.*

Mr. Babcock's resignation demand is legally indistinguishable from the category of oaths the Supreme Court has found to violate the Constitution. Both subject the potential beneficiaries of government action to a political litmus test to determine their eligibility. But unlike the oath cases courts have actually considered, where a benefit was conditioned on the foreswearing of a particular belief, the resignation demand compelled at-will employees to *express their agreement with* a

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 23 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 23 of 38

particular partisan agenda. In this sense, the demand is more like the unconstitutional compelled subsidization of speech in *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448 (2018).

Mark Janus was a public employee who refused to join the union representing his governmental unit, but who was nevertheless required to pay non-member union dues. *Id.* at 2461. Janus opposed "many of the public policy positions" that the union advocated and argued that he should not have to "pay any fees or otherwise subsidize" speech with which he disagreed. *Id.* The Court held that forcing Janus to *subsidize* speech with which he did not agree violates the First Amendment as much as it would if he were compelled to engage in the speech himself. *Id.* at 2464.

Mr. Babcock's demand—that all at-will employees sign on to the new governor's agenda, is the functional equivalent of the compelled speech forbidden in *Janus*, and is equally constitutionally offensive. Requiring a public employee to voice support for policies that are not his own violates the "cardinal constitutional command" that a person retains his right not to speak in a way that infringes on his freedom of association. *Id.* at 1263.

For this same reason, Mr. Babcock's resignation demand also violates the longstanding principle that "[a]bsent some reasonably

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 24 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 24 of 38

appropriate requirement, government may not make public employment subject to the express condition of political beliefs or prescribed expression." *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 717 (1996). In *O'Hare*, a public contractor was "targeted with a specific demand for political support." *Id.* at 721. When the contractor refused, his contract, which "based on longstanding practice, he had reason to believe would continue," was terminated. *Id.* The Supreme Court saw "nothing to distinguish this from the coercion exercised in [its] other unconstitutional conditions cases." *Id.*

Just as in *O'Hare,* there is "nothing to distinguish" Mr. Babcock's resignation demand from the long line of "unconstitutional conditions" cases to which the Court refers. Collectively, the words in the memorandum, the resignation template, and Mr. Babcock's and Mr. Dunleavy's publicized descriptions of their meaning and intent cannot be interpreted any differently than a "targeted demand for political support." And just like the demands for political support also found to violate the First Amendment in *Elrod v. Burns* and *Branti v. Finkle*, the resignation demand placed a condition on the employment of a vast number of public workers that is impermissible under our federal and state constitutions.

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 25 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 25 of 38

**ACLU of Alaska Foundation**
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

## C. Defendants Cannot Show Any Legitimate Interest in Issuing the Resignation Demand

The State bears "a heavy burden" to show that an inquiry into "an individual's beliefs and associations . . . is necessary to protect a legitimate state interest." *Baird v. State Bar of Ariz.*, 401 U.S. 1, 6–7 (1971). Generally, courts will apply strict scrutiny to "content-based laws that regulate . . . noncommercial speech . . . ." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2374 (2018). But even under the less demanding standard of "exacting scrutiny" applied in cases involving "compulsory subsidization of commercial speech," government action must "serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. at 2465.

Defendants cannot meet this burden to justify their resignation demand. The resignation memorandum states that it is "customary" to request resignations during a gubernatorial transition. Ex. 1. But the memorandum was issued to hundreds more public employees than had ever before been asked to step aside for an incoming administration. The November 2018 memorandum was sent to over 800 at-will employees, Ex. 6, more than triple the roughly 250 who received a

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

similar request four years before. Ex. 4 at 2; Ex. 5 at 1. Mr. Babcock acknowledged this fact. "I do think this is something bold and different," he said. Ex. 4 at 2. So too did the governor-elect's spokesperson, who admitted that Mr. Dunleavy had "broadened the scope of which employees" could be subject to summary dismissal, something that "typically had not been done in the past." *Id.*

As Mr. Babcock described it, the memorandum was sent to all at-will employees. *Id.* Presumably, almost all of these employees, also categorized as "exempt" or "non-exempt," Ex. 6, had already vowed to uphold the Constitution and to "faithfully discharge" their duties as public servants. *See* AS 39.05.045 (requiring public officers and employees to take the oath). The difference with the Defendants' resignation demand is that it sought their political allegiance as well.

But an employee's classification as exempt is not a political designation, and seeking their political loyalty in addition to their commitment to "faithfully discharge" their duties serves no legitimate governmental purpose. While many exempt employees are directly appointed by the governor and are considered policymakers because of their unique roles, many more are not. As the Alaska Supreme Court recognized, "[a]long with legislators, judges and commissioners, the exempt service includes all employees of the Alaska Court System and

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

the Legislature; all employees of the University of Alaska; all employees of a regional educational attendance area; [and] all patients and inmates employed in State institutions . . . ." *Zerbetz v. Alaska Energy Ctr.*, 708 P.2d 1270, 1276 (Alaska 1985). Indeed, the statutory list is much more extensive. It also includes pharmacists and physicians, petroleum engineers and petroleum geologists, the state medical examiner and all assistant medical examiners, insurance actuaries or assistant actuaries, and all employees of Alaska Permanent Fund Corporation, the Alaska Industrial Development and Export Authority, the Alaska Commercial Fisheries Entry Commission, the Alaska Commission on Postsecondary Education, the Alaska Seafood Marketing Institute, the Alaska Aerospace Corporation, the Knik Arm Bridge and Toll Authority, and the Alaska State Council on the Arts. *See* AS 39.25.110.

"Exempt" defines a "category of jobs which, for whatever reason, the Legislature wanted to exclude from the state personnel system. Thus, "[n]ot every person in the exempt service is a confidential [or policymaking] employee." *Zerbetz*, 708 P.2d at 1277. For example, state ferry workers are exempt because they are "not susceptible to ordinary recruiting and examining procedures." *Hafling v. Inlandboatmen's Union of Pac.*, 585 P.2d 870, 875 (Alaska 1978).

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS

So too are the psychiatrists at API. As explained by Gavin Carmichael, the former API chief executive officer, "these are very, very difficult positions to fill. It takes on average one to three years probably to get a mature forensic-centered psychiatrist to sign on and come to Alaska and work at a State hospital." Ex. 13 at 9 (Tr. 60:12-16). Recruitment, however, is only one factor: "obviously physicians and professionals are going to be exempt employees because they're not required—you're not necessarily punching a 40-hour time clock. You can be required to do more and sometimes a little less. *Id.* at 15 (Tr. 98:18-22). And while the Alaska legislature may have designated the psychiatrists at API as exempt "for whatever reason," *Zerbetz,* 708 P.2d at 1277, one thing is clear: that designation was *not* so they could be subject to discharge if they didn't agree with the governor's political philosophy or agenda. Ex. 13 at 16-17 (Tr. 99:19-100:2).

Because the resignations were demanded from vast numbers of employees whose jobs did not require their political allegiance to the new governor, Defendants had no legitimate purpose to make them. In some cases, a public employee's speech may be compelled "pursuant to his official duties" if the speech would be "the product of performing the tasks the employee was paid to perform." *Anthoine v. N. Cent. Ctys. Consortium*, 605 F.3d 740, 750 (9th Cir. 2010). But one cannot

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS

Page 29 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 29 of 38

reasonably conclude that all State of Alaska at-will employees are in such a precarious political position that their employment is subject to arbitrary termination every four years, contingent on the Tammany Hall-style political favor of each incoming administration. The legislature did not intend to infect the entire exempt service with widespread "political machine" patronage and corruption, practices that the United States and Alaska Constitutions now forbid. For these reasons, the Defendants' resignation demand cannot meet the "exacting scrutiny" that *Janus* requires.

### D. Plaintiffs Were Fired Because They Exercised Their Right to Refuse to Engage in Political Speech

Because both Dr. Blanford and Dr. Bellville saw the resignation demand for what it was—a solicitation for political loyalty to an incoming administration's agenda—they refused to comply with it. Ex. 14, ¶ 16; Ex. 15, ¶ 14. Although Dr. Blanford published his reasons in a letter to the editor of the Anchorage Daily News shortly after the demand was made, Ex. 21, their refusals required no explanation. Mr. Babcock had announced that failure to resign in response to the demand sent the message that "you don't want to express a positive desire" to remain in your position and "work on [Mr. Dunleavy's] agenda . . . ." Ex. 4 at 3.

ACLU of ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 30 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 30 of 38

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

Nevertheless, both doctors did voice their opposition to submitting their resignations to Mr. Carmichael, the API CEO. As Mr. Carmichael explained, they regarded the resignation as a loyalty oath and protested that they were not required to sign "a pledge or anything at the time when we had the last governor in office." Ex. 13 at 5 (Tr. 37:14-20). The doctor's reasons for refusing to resign, however, are but one factor in determining whether their speech was political. *Wks. v. Bayer*, 246 F.3d 1231, 1235 (9th Cir. 2001). It is "the content, form, and context" of a person's speech or, in this case, their refusal to speak, "revealed by the whole record," that determines its protected status. *Connick v. Myers*, 461 U.S. 138, 147–48 (1983). The facts of this case— the timing of the resignation demand, its explicit references to work in the "Dunleavy administration," Mr. Babcock's contemporaneous public descriptions of it as a solicitation to work on the "Dunleavy agenda," and the threat of termination for failure to comply—all demonstrate that, as a matter of law, Dr. Blanford's and Dr. Bellville's refusal to resign was political speech protected by the First Amendment.

Just as surely, Defendants' motives for terminating the doctors' employment is not in dispute. The only reason for the doctors' firings was because each "failed to respond to the 'Resignation Request Memorandum.'" Ex. 24 at 4. Laid bare, Defendants retaliated against

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

Drs. Blanford and Bellville because they exercised their constitutional right not to speak when they refused to resign.

While it is well settled that the First Amendment prohibits public employers from retaliating against a person for their protected speech activities, *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012); *Hunt v. Cty. of Orange*, 672 F.3d 606, 611 (9th Cir. 2012) (citing *Elrod v. Burns* and *Branti v. Finkle*), in some cases the government can limit those rights when an employee is in a "policymaking" position. *Elrod v. Burns*, 427 U.S. 347, 367 (1976). But "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518 (1980).

The policymaker exemption is a "narrow exception" to public employees' constitutional rights. *DiRuzza v. Cty. of Tehama*, 206 F.3d 1304, 1308 (9th Cir. 2000). Accordingly, affixing the "policymaker" label to any employee "should be applied with caution." *Hunt v. Cty. of Orange*, 672 F.3d 606, 611 (9th Cir. 2012). In all cases, the burden of establishing that a discharged employee was a policymaker rests with the government. *Id.* (citing *Elrod*, 427 U.S. at 612). To meet this

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 32 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 32 of 38

burden, the government must demonstrate that the "actual, not the possible, duties of an individual employee" establish that "political loyalty is appropriate for the effective performance of her job." *DiRuzza,* 206 F.3d at 1310.

In this case, Defendant's admit that Dr. Bellville was *not* in a policymaking position. Comp. ¶¶ 52, 63 (Docket 1-1; Answer ¶¶ 52, 63 (Docket 24). But neither was Dr. Blanford. In this case he was one of the multitudes of people to receive the Babcock resignation demand who had nothing to do with party loyalty or political affiliation. The record in this case makes this clear.

Defendants have produced a detailed list of duties they say Dr. Blanford was responsible for carrying out as the chief of psychiatry. Ex. 24 (Defendants' Response to Interrogatory No. 1) at 2–3. But Defendants cannot identify one instance where Dr. Blanford's political affiliation had any effect on how he carried out these duties. Ex. 13 at 11 (Tr. 85:19-25). When Dr. Blanford was asked or required to "weigh in" on a policy decision, for example, his opinions were never influenced by political considerations. *Id.* at 10 (Tr. 67:8-12). Instead, they "were very clinically driven." *Id.* (Tr. 67:12-13). "[E]very day, [Dr. Blanford] came to work at API, [he] made decisions based on the best interest of patient care." *Id.* (Tr. 67:16-21).

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 33 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 33 of 38

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: legal@acluak.org

Likewise, whom he voted for, or whether Dr. Blanford supported Governor Dunleavy's agenda, had no influence on any of his job responsibilities. *Id.* at 12 (Tr. 86:1-9). And notably, whether Dr. Blanford supported Governor Dunleavy or not had no effect on his superior's trust or confidence in his performance. *Id.* (Tr. 86:10-14). Dr. Blanford rarely, if ever, had reason to communicate with anyone higher than his direct supervisor. *Id.* at 13 (Tr. 87:19-25). And at no time did Dr. Blanford have to communicate with the governor or the governor's office. *Id.* at 14 (Tr. 88:2-7).

Defendants cannot show that Dr. Blanford's actual duties made it such that "political loyalty [was] appropriate for the effective performance of [his] job." *DiRuzza,* 206 F.3d at 1310. Because neither he nor Dr. Bellville were in policymaking roles, neither could be subject to dismissal for exercising their right not to speak. Accordingly, Defendants violated both doctors' First Amendment rights and their rights under Article I, § 5 of the Alaska Constitution when they terminated their employment.

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS                                                          Page 34 of 35
Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 34 of 38

This Court should issue judgment in favor of Plaintiffs on their First Amendment claim. Tuckerman Babcock's resignation demand sought to compel political speech when there was no legitimate government interest in doing so. Plaintiffs exercised their constitutional right not to speak when they refused to comply with the demand, and they were fired as a result. Defendants' actions violated the fundamental protections inherent in the First Amendment's free speech guarantee. And because the Alaska Constitution is to be interpreted at least as broadly as its federal counterpart, for the same reasons that Plaintiffs should prevail on their First Amendment claim, this Court should issue judgment in favor of Plaintiffs on the claim that Defendants have violated Article I, § 5, of the Alaska Constitution.

Dated April 9, 2021.

By: _____ s/*Stephen Koteff* _____
Stephen Koteff, Bar No. 9407070
Joshua A. Decker, Bar No. 1201001
ACLU OF ALASKA FOUNDATION
1057 West Fireweed Lane, Suite 207
Anchorage, AK 99503
(907) 263-2007 (telephone)
skoteff@acluak.org
jdecker@acluak.org

*Counsel for Plaintiffs Anthony L. Blanford and John K. Bellville*

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

*Blanford and Bellville v. Dunleavy, et al.*
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS
Page 35 of 35

Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 35 of 38

Stephen Koteff, No. 9407070
Joshua A. Decker, No. 1201001
ACLU of Alaska Foundation
1057 W. Fireweed Lane, Ste. 207
Anchorage, AK 99503
(907) 263-2007
*skoteff@acluak.org*

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | | |
|---|---|---|
| ANTHONY L. BLANFORD and JOHN K. BELLVILLE, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 3:19-cv-00036-JWS |
| v. | ) ) ) | |
| MICHAEL J. DUNLEAVY, in his individual and official capacities; TUCKERMAN BABCOCK; and the STATE OF ALASKA, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**EXHIBITS TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

Exhibit 1:   Memorandum from Tuckerman Babcock re "Request for Resignation," November 16, 2018

Exhibit 2:   Email from Leslie Ridle, Nov. 19. 2018

Exhibit 3:   Resignation Form

Exhibit 4:   Annie Zak, *Dunleavy team asks all at-will state workers for resignations*, Anchorage Daily News, Nov. 16, 2018

Exhibit 5:   Letter from Senator Bill Wielechowski, *et al.,* to Governor-elect Mike Dunleavy, Nov. 27. 2018

*Blanford and Bellville v. Dunleavy, et al.*
Table of Contents—Exhibits to plaintiffs' motion for summary judgment
Case No. 3:19-cv-00036-JWS                                                    Page 1

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: *legal@acluak.org*

ACLU of Alaska Foundation
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
Tel: 907.258.0044
Fax: 907.258.0288
Email: legal@acluak.org

Exhibit 6:    "Resignation Memo Sent List"

Exhibit 7:    Alex DeMarban, *Walker team 'strongly' objects as Dunleavy transition asks all at-will Alaska state workers for resignation letters,* Anchorage Daily News, Nov. 17, 2018

Exhibit 8:    Kyle Hopkins, *Dunleavy chief of staff: 'No public servant should ever think that they are irreplaceable,'* Anchorage Daily News, Nov. 18, 2018

Exhibit 9:    Anthony Blanford Initial Appointment Request, Feb. 4, 2016

Exhibit 10:   Anthony Blanford Interim Chief Appointment Request, July 14, 2017

Exhibit 11:   Anthony Blanford Permanent Chief Appointment Request, June 4, 2018

Exhibit 12:   John Bellville Appointment Request, Feb. 5, 2018

Exhibit 13:   Deposition of Gavin Carmichael (excerpted), Jan. 7, 2021

Exhibit 14:   Declaration of Anthony L. Blanford, April 8, 2021

Exhibit 15:   Declaration of John K. Bellville. April 8, 2021

Exhibit 16:   Anthony Blanford Oath of Office (psychiatrist), April 11, 2016

Exhibit 17:   John Bellville Oath of Office (staff psychiatrist), May 27, 2018

Exhibit 18:   Anthony Blanford Oath of Office (chief of psychiatry), June 15, 2018

Exhibit 19:   Anthony Blanford, Policy Acknowledgements, June 15, 2018

Exhibit 20:   John Bellville, Policy Acknowledgements, May 28, 2018

*Blanford and Bellville v. Dunleavy, et al.*
Table of Contents—Exhibits to plaintiffs' motion for summary judgment
Case No. 3:19-cv-00036-JWS                                                    Page 2
Case 3:19-cv-00036-JWS   Document 54   Filed 04/09/21   Page 37 of 38

Exhibit 21: *Letter, I will not resign*, Anchorage Daily News, Nov. 19, 2018

Exhibit 22: Anthony Blanford Termination Email, Dec. 3, 2018

Exhibit 23: John Bellville Termination Email, Dec. 3, 2018

Exhibit 24: Defendants' Responses to Plaintiff's First Discovery Requests (excerpted), May 8, 2020

Exhibit 25: Deposition of Albert Wall (excerpted), Jan. 5, 2021

ACLU OF ALASKA FOUNDATION
1057 W. Fireweed Ln. Suite 207
Anchorage, Alaska 99503
TEL: 907.258.0044
FAX: 907.258.0288
EMAIL: *legal@acluak.org*

*Blanford and Bellville v. Dunleavy, et al.*
TABLE OF CONTENTS—EXHIBITS TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:19-cv-00036-JWS                                                                 Page 3