Brewster H. Jamieson, ABA No. 8411122
Michael B. Baylous, ABA No. 0905022
LANE POWELL LLC
1600 A Street, Suite 304
Anchorage, Alaska 99501-5148
Telephone:  907.264.3325
            907.264.3303
Email:      jamiesonb@lanepowell.com
            baylousm@lanepowell.com

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| ANTHONY L. BLANFORD and JOHN K. BELLVILLE,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL J. DUNLEAVY; in his individual and official capacities; TUCKERMAN BABCOCK; and the STATE OF ALASKA,<br><br>Defendants. | Case No. 3:19-cv-00036-JWS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR <u>SUMMARY JUDGMENT</u>** |
|---|---|

Defendants the State of Alaska (the "State"), Governor Michael Dunleavy, and Tuckerman Babcock oppose Plaintiffs' April 9, 2021 Motion for Summary Judgment (the "Motion").

## I. <u>INTRODUCTION</u>

In the weeks before he took office, Governor Dunleavy and his incoming chief of staff, Tuckerman Babcock, requested that at-will employees tender their resignations and state interest in continued employment. Most employees who received this request complied. Anthony Blanford, Alaska Psychiatric Institute's director of psychiatry, and John Bellville, a staff psychiatrist, did not. They were discharged as a result. Then they declined invitations to return to work. Instead, they filed this suit, asserting violation of

their free speech rights as public employees. Their claims cannot be squared with public employee free speech case law and principles of compelled speech. Nor can their claims be saved by stirring statements from cases addressing different factual and legal circumstances. Nonetheless, Dr. Blanford and Dr. Bellville seek summary judgment in their favor. This should be denied.

## II. BACKGROUND

Defendants described the background to this case in their Motion for Summary Judgment.[1] Dr. Blanford and Dr. Bellville relate essentially the same facts, adding emphasis and characterization.[2]

**A.     Request for Resignation and Statement of Interest**

After Governor Dunleavy won the November 2018 general election, he named Mr. Babcock as chief of staff.[3] Mr. Babcock sent a memorandum to the State's at will-employees, explaining that Governor Dunleavy planned to bring "his own brand of energy and direction to state government."[4] To facilitate the transition, the memo instructed recipients to submit resignations by November 30, 2018.[5] Resignations were to be effective "upon acceptance,"[6] but would not be accepted automatically.[7] The memo made no reference to any political party, instead "encouraging [recipients] and all Alaskans to submit their names for consideration for service to our great state."[8]

---

[1] Dkt. 55.

[2] Dkt. 54.

[3] Dkt. 55 at 2; Dkt. 54 at 2–3.

[4] Dkt. 55 at 2; *see also* Dkt. 54 at 3 (describing other statements in the memo).

[5] Dkt. 54 at 2; *see also* Dkt. 55 at 3.

[6] Dkt. 55 at 2.

[7] Dkt. 54 at 3.

[8] Dkt. 55 at 3 (quotations omitted); *see also* Dkt. 54 (quoting only second paragraph).

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)                                              Page 2 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 2 of 19

Accompanying the memo was a template for the requested resignation and optional statement of interest, which read:

> Please accept this letter as notice of my resignation from my position as [psychiatrist]. I understand my resignation shall be effective upon receiving notice from your administration.
>
> I [have] submitted my name for consideration for my current position to continue with the new administration.[9]

The day after the memorandum was sent, the *Anchorage Daily News* spliced into a story reported statements about the memorandum from Mr. Babcock and the Governor. The paper reported Mr. Babcock as saying:

> [Governor Dunleavy] just wants all of the state employees who are at-will . . . to affirmatively say, "Yes, I want to work for the Dunleavy administration" . . . . Not just bureaucracy staying in place, but sending out the message, "Do you want to work on this agenda, do you want to work in this administration? Just let us know" . . . . I do think this is something bold and different, and it's not meant to intimidate or scare anybody. It's meant to say, "Do you want to be part of this?" . . . if you don't want to express a positive desire, just don't submit your letter of resignation . . . . And then you've let us know you just wish to be terminated."[10]

The paper reported the Governor as saying only: "We want to give people an opportunity to think about whether they want to remain in this administration and be able to have a conversation with us."[11] The resignation request and press reports about it prompted a handful of legislators to question the wisdom of the request and its execution.[12]

---

[9] Dkt. 55 at 3 (quotations omitted); *see also* Dkt. 54 at 3.

[10] Dkt. 55 at 3 (quotations omitted); *see also* Dkt. 54 at 4–5.

[11] Dkt. 55 at 3 (quotations omitted).

[12] Dkt. 54 at 6.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)  Page 3 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 3 of 19

## B. Dr. Blanford and Dr. Bellville's Employment

Dr. Blanford and Dr. Bellville served as psychiatrists at API, with Dr. Blanford serving as director of psychiatry.[13] This position earned Dr. Blanford the third-highest salary in the State's executive branch.[14] His duties accorded with his pay. He was responsible for "administrative management, and oversight of all medical, psychiatric, and clinic services."[15] He ensured compliance with state law and handled a Center for Medicare and Medicaid Services investigation.[16] And he managed a staff of well over 100 doctors, nurse practitioners, physician assistants, and pharmacists, a task which called for him to negotiate with a nurse's union to accomplish his policy goals for API.[17] In these respects, Dr. Blanford's duties called on good sense about "very complicated" and "not very transactional" topics.[18] Dr. Blanford had a role in shaping politically sensitive policies related to admission criteria and care for adolescents.[19] His influence depended in part on his "good relationship" with API's CEO, who reported to the Commissioner.[20]

## C. Dr. Blanford and Dr. Bellville's Reactions to the Resignation Request

Both Dr. Blanford and Dr. Bellville objected to the resignation request.[21] Each wrote about the request—Dr. Blanford in a letter to the editor of the *Anchorage Daily News* and Dr. Bellville in a co-authored letter to the Governor.[22] Both letters expressed

---

[13] Dkt. 55 at 4; Dkt. 54 at 7.

[14] Dkt. 55 at 4.

[15] Dkt. 55 at 4.

[16] Dkt. 55 at 4–5.

[17] Dkt. 55 at 4–5.

[18] Dkt. 55 at 5 (quotations omitted).

[19] Dkt. 55 at 5.

[20] Dkt. 55 at 5.

[21] Dkt. 55 at 5–6; *see also* Dkt. 54 at 8–9.

[22] Dkt. 55 at 5–6; *see also* Dkt. 54 at 8–9 (describing only Dr. Blanford's letter).

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)    Page 4 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 4 of 19

commitment to serving API's patients.[23] Neither Dr. Blanford nor Dr. Bellville contends in summary judgment briefing that he was discharged for the content of his letter[24]—and neither was.[25]

Dr. Blanford and Dr. Bellville determined they would not submit resignations. They explained this to API COO Gavin Carmichael. Mr. Carmichael did not regard the resignation request "100 percent as a loyalty pledge. [He] saw it as an alignment document where as, in [his] mind, it's a stretch to think of it as a loyalty pledge. But that was their optics; that was the lens they looked at it through."[26] Yet he respected the sincerity of Dr. Blanford and Dr. Bellville's belief to the contrary.[27] Accordingly, he understood their refusal when he tried to reason with them that he was "going to have to drop the hospital capacity by 30 beds or so . . . . Come on now. Is that really in the best interests of the patients."[28]

Dr. Blanford and Dr. Bellville could not be swayed. They were discharged like other employees who failed to resign.[29] They also refused the "almost immediate[]"[30] offer to continue in their positions.[31] They only had to "submit[] a letter of interest,"[32] or "just tell [Commissioner Crum] they wanted to take their job back."[33] Neither this

---

[23] Dkt. 55 at 6.

[24] *See, e.g.*, Dkt. 54 at 2 (asserting termination for refusal to resign but not refencing the content of either letter).

[25] Dkt. 55 at 7.

[26] Dkt. 56-3 at 8 (Carmichael Dep. 42:22–43:2).

[27] *See* Dkt. 54 at 9.

[28] Dkt. 55 at 7.

[29] Dkt. 55 at 7; *see also* Dkt. 54 at 10.

[30] Dkt. 54 at 10.

[31] Dkt. 55 at 7; *see also* Dkt. 54 at 10.

[32] Dkt. 54 at 10 (quotations omitted).

[33] Dkt. 55 at 7 (quotations omitted).

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)	Page 5 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 5 of 19

immediate effort nor a later effort to bring Dr. Blanford and Dr. Bellville back to work bore fruit, though Dr. Blanford has since returned to work as an employee of a private contractor providing services at API.[34]

Dr. Blanford and Dr. Bellville filed this lawsuit, alleging violation of their free speech rights and asserting claims under 42 U.S.C. § 1983 and Alaska law. Both parties have moved for summary judgment.

## III. ARGUMENT

Dr. Blanford and Dr. Bellville claim to have a right to refuse a request to offer resignation from and request continuation in public employment. But they had neither (A) a First Amendment right nor (B) a right under the Alaska Constitution protecting their refusal to submit a pro-forma resignation. The facts—even as Dr. Blanford and Dr. Bellville state them—cannot be made to fit the law defining these rights. Accordingly, they are not "entitled to judgment as a matter of law," and the Court should deny summary judgment to Dr. Blanford and Dr. Bellville. Fed. R. Civ. P. 56(a).

### A. Dr. Blanford and Dr. Bellville Had No First Amendment Right to Refuse the Resignation Request.

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). This is because "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it there would be little chance for the efficient provision of public services." *Id.* Public employees still have rights "as private citizens." *Id.* at 419. But under *Pickering v. Board of Education*, 391 U.S. 563 (1968), these rights must be balanced against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568. This much is uncontroversial "[i]n the forty years since *Pickering*." *See, e.g.*, *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009).

---

[34] Dkt. 55 at 7 & n.35.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)        Page 6 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 6 of 19

Under *Pickering* and its progeny, Dr. Blanford and Dr. Bellville have no First Amendment claim because (1) Dr. Blanford was a policymaking employee who lacked the right to speak without job consequence, and (2) the resignation request implicated neither Dr. Blanford's nor Dr. Bellville's speech rights.

### 1. A Highly Placed State Employee Like Dr. Blanford May be Discharged Without Offending the First Amendment.

"Under *Elrod v. Burns*, 427 U.S. 347 (1976), a public official who is a 'policymaker' may be fired for political reasons without offending the United States Constitution." *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997). This blanket rule "dispos[es] of any First Amendment retaliation claim" brought by a policy-making employee. *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 994–95 (9th Cir. 1997). In this context, "[p]olicymaker . . . does not mean 'one who makes policy.' Rather, the term refers to a position in which political considerations are 'appropriate requirement[s] for the effective performance of the public office involved.'" *Fazio*, 125 F.3d at 1333 (quoting *Branti v. Finkel*, 445 U.S. 507, 519 (1980)). The only question is whether Dr. Blanford was such an employee.

He was because his position accords with the factors the Ninth Circuit considers in determining policymaker status. *See Fazio*, 125 F.3d at 1334 n.5. Dr. Blanford was one of the highest-paid employees in the State with responsibilities matching his salary. He influenced politically sensitive policies by leveraging a good relationship with API's CEO, who reported to the Commissioner. Dr. Blanford managed a staff of more than 100 clinicians, including other doctors and nurse practitioners. He exercised leadership in negotiating with the nurse's union and in managing API's response to a Center for Medicare and Medicaid Services Investigation. He had at least as much influence over policy as the sheriff's deputy managing a division of volunteers the Ninth Circuit held to be a policymaker because of "vague and broad responsibilities," "influence on . . . programs," "particular technical competence," and the "power to control others." *Bardzik v. County of Orange*, 635 F.3d 1138, 1146–48 (9th Cir. 2011).

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS) Page 7 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 7 of 19

To say otherwise, Dr. Blanford cites cases addressing less skilled and less influential employees. *DiRuzza v. County of Tehama*, 206 F.3d 1304 (9th Cir. 2000), concerned a deputy sheriff, the title given "the lowest ranking peace officers in the department." *Id.* at 1310. *Hunt v. County of Orange*, 672 F.3d 606 (9th Cir. 2012), concerned a sheriff's lieutenant who formulated no policy and did not need the confidence of the sheriff, the assistant sheriffs, or even captains to do his job. *Id.* at 612. Dr. Blanford likens himself to these low-level employees to argue he was not "influenced by political considerations."[35] Even if there is a question about Dr. Blanford's "responsiveness to partisan politics and political leaders," his influence over policy—the "most critical factor"—makes him a policymaker. *Bardzik*, 635 F.3d at 1146 (quotations omitted). And the record is clear that Dr. Blanford's management of staff and influence over policy put him near the highest levels of State government. For this, he was paid more than virtually any other State employee. Dr. Blanford's inability to disclaim policymaker status "dispos[es] of" his First Amendment claim. *Biggs*, 189 F.3d at 994–95. For this reason alone, he is not entitled to summary judgment.

### 2. Refusing to Resign Is Not Constitutionally Protected.

Dr. Blanford and Dr. Bellville do not argue either was discharged for writing a letter about the resignation request. Instead, they argue the State cannot "constitutionally compel a statement of allegiance" from them.[36] The argument requires them to apply cases governing public employee speech claims and compelled speech claims. Instead, Dr. Blanford and Dr. Bellville point to inapposite cases about school children, statements sworn under penalty of perjury, political patronage, and required payments to public employees' unions. Because these cases do not apply here, they fail to save Dr. Blanford and Dr. Bellville's legally invalid claims.

---

[35] Dkt. 54 at 33.

[36] Dkt. 54 at 2.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS) Page 8 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 8 of 19

### a. Public Employees Lack a First Amendment Right to Refuse Job-Related Speech.

Freedom of speech "includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). But public employees rarely, if ever, have the right to refuse job-related speech. After all, public employees accept pay to perform job duties, which often entail speaking for or to the government. The "First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Garcetti*, 547 U.S. at 424. This is no less true in the context of compelled speech. *See Bowie v. Maddox*, 653 F.3d 45, 47–48 (D.C. Cir. 2011). Dr. Blanford and Dr. Bellville received the resignation requests at their State email addresses and attended a "staff meeting" to discuss the request.[37] The request was addressed to them as employees. That they disagreed with the request or thought it unusual is beside the point. An objection to a job order "does not necessarily mean the employee has a cause of action *under the First Amendment* when he contravenes that order." *Bowie*, 653 F.3d at 48.[38]

Dr. Blanford and Dr. Bellville make four attempts to avoid this conclusion. Each fails.

<u>First</u>, Dr. Blanford and Dr. Bellville try to recast *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943), as a public employee speech case.[39] It is not. True, the flag salute policy at issue there applied to both students and teachers. *Barnette*, 319 U.S. at 626 n.2. But only students' parents—and no teachers—challenged the policy.

---

[37] Dkt. 54-6 at 5; Dkt. 54 at 9.

[38] Dr. Blanford and Dr. Bellville cite *Anthoine v. North Central Counties Consortium*, 605 F.3d 740 (9th Cir. 2010), as a compelled speech case. *See* Dkt. 54 at 20. It is not. *Anthoine* concerned a "a low-level employee who jumped the chain of command to report directly to the chairman of his employer's governing board that his immediate supervisor had misrepresented the status of the employer's compliance with its legal obligations." *Id.* at 45. The employee was discharged for what he said, not for what he failed to say.

[39] *See* Dkt. 54 at 13–14.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS) Page 9 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 9 of 19

*Barnette v. W. Va. State Bd. of Educ.*, 47 F. Supp. 251, 252 (S.D. W. Va. 1942). And the Court only addressed the rights of students and parents. *See Barnette*, 319 U.S. at 631 ("Here, however, we are dealing with a compulsion of students to declare a belief."). For this reason, the Supreme Court's seminal public employee speech cases do not cite *Barnette. See Garcetti*, 547 U.S. at 410–26; *Connick v. Myers*, 461 U.S. 138, 138–54 (1983); *Pickering*, 391 U.S. at 563–82.

Second, Dr. Blanford and Dr. Bellville try to aggrandize their refusals to resign by likening themselves to the plaintiffs in the Supreme Court's oath cases.[40] These cases arose during the Cold War when states "impos[ed] civil disabilities or criminal punishment" for membership in certain groups or requested statements under penalty of perjury disclaiming past membership. *Baird v. State Bar of Ariz.*, 401 U.S. 1, 9 (1971) (Stewart, J., concurring in judgment); *see also Cramp v. Bd. of Pub. Instruction of Orange Cty.*, 368 U.S. 278, 283 (1961). Criminal punishment lurked in the background of these cases. *See id.*; *see also Baggett v. Bullitt*, 377 U.S. 360, 374 (1964) ("Even if it can be said that a conviction for falsely taking this oath would not sustained, the possibility of a prosecution cannot be gainsaid."). The Supreme Court responded by applying vagueness doctrine to permit oaths disclaiming only "knowing membership in an organization advocating the overthrow of the Government by force or violence, on the part of one sharing the specific intent to further the organization's illegal goals." *Law Students Civil Rights Res. Council, Inc. v. Wadmond*, 401 U.S. 154, 165 (1971).

The stakes here could not be more different. No oath was required of Dr. Blanford or Dr. Bellville, only a pro forma resignation. Even if Mr. Babcock's resignation request memo could be twisted into an oath solicitation, it cannot be made to fit the kinds of oaths the Supreme Court rejected. The memo threatened no criminal punishment. Where oaths are not linked to realistic prospect of punishment if violated, they are more likely constitutional. *See Cole v. Richardson*, 405 U.S. 676, 685 (1972). And no reading of the

---

[40] *See* Dkt. 54 at 14–15, 22–23.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS) Page 10 of 19

Case 3:19-cv-00036-JWS Document 61 Filed 05/14/21 Page 10 of 19

memo—even Dr. Blanford and Dr. Bellville's fanciful reading that "they needed to affirm that they supported the political goals of the Governor-elect,"[41]—describes an unconstitutional oath. Oaths of support do not "create specific responsibilities but . . . assure that those in positions of public trust [are] willing to commit themselves to live by the constitutional processes of our system." *Cole*, 405 U.S. at 684. Even when the government requests statements of support unlike the oath of office in the Constitution, the request is constitutional so long as it is for a "prospective and aspirational" statement constituting only an unenforceable "moral obligation." *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 165 (5th Cir. 2009). Even having discerned an oath where none existed, Dr. Blanford and Dr. Bellville did not discern an *unconstitutional* oath.

<u>Third</u>, Dr. Blanford and Dr. Bellville invoke political patronage cases.[42] Again, these cases are inapposite because the resignation request concerned no partisan politicking—it went to public employees regardless of political party membership or campaign activity and sought continued service from "all Alaskans."[43] The political patronage cases turn on strikingly different facts.

The modern cases begin with *Elrod*, where a plurality of the Court held that, in general, "dismissing public employees for partisan reasons" is unconstitutional. 427 U.S. at 353. The case concerned a county sheriff who discharged employees "solely because they did not support and were not members of the Democratic Party and had failed to obtain the sponsorship of one of its leaders." *Id.* at 351. The other patronage cases Dr. Blanford and Dr. Bellville cite illustrates the point. In *Branti v. Finkel*, 445 U.S. 507 (1980), public defenders "had been selected for termination solely because they were Republicans and thus did not have the necessary Democratic sponsors." *Id.* at 510. In *O'Hare Truck Service v. City of Northlake*, 518 U.S. 712 (1996), a tow truck company

---

[41] Dkt. 54 at 21.

[42] Dkt. 54 at 16, 25.

[43] Dkt. 55 at 3 (quotations omitted); *see also* Dkt. 54 (quoting only second paragraph).

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)            Page 11 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 11 of 19

was removed from a list of preferred providers after its owner refused to donate to a mayoral campaign and supported the mayor's opponent. *Id.* at 715–16.

These cases share a common feature—adverse action tied directly to a party affiliation or campaign funding or support. The facts here fall outside this well-defined channel. Neither the record nor Dr. Blanford and Dr. Bellville's opening brief state their political party affiliation (if they have one). That is because it is wholly irrelevant to this case. So too are the political patronage cases, which turned on facts about party affiliation.

<u>Fourth</u>, Dr. Blanford and Dr. Bellville seek support from *Janus v. American Federation of State, County, & Municipal Employees*, 138 S. Ct. 2448 (2018).[44] The Court's opinion contains stirring statements about free speech. But none of these provide a rule for this case. That is because *Janus* concerned a narrow issue. The Court held that "a significant impingement on First Amendment rights occurs when public employees are required to provide financial support for a union that takes many positions during collective bargaining that have powerful political and civic consequences." *Id.* at 2464 (quotations omitted). The Court's repeated statements show money was key to the decision. It abjured "[c]ompelling a person to *subsidize* the speech of other private speakers." *Id.* And it remarked, again, "Because the compelled *subsidization* of private speech seriously impinges on First Amendment rights, it cannot be casually allowed." *Id.* (emphasis added). The Court regarded the context as "very different" from the context calling for a *Pickering* analysis, *id.* at 2472, in part because *Pickering* did not involve compelled subsidies of private parties, *id.* at 2473.

The Ninth Circuit has taken *Janus* at face value and applied it to cases concerning union fees, *see e.g.*, *Belgau v. Inslee*, 975 F.3d 940, 944 (9th Cir. 2020), state bar dues, *Crowe v. Or. State Bar*, 989 F.3d 714, 724–25 (9th Cir. 2021) (rejecting argument based on *Janus*), and other instances related to funding of private speech, *Interpipe*

---

[44] Dkt. 54 at 15–16, 24.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)   Page 12 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 12 of 19

*Contracting, Inc. v. Becerra*, 898 F.3d 879, 896–97 (9th Cir. 2018). So too the judges of this district, who have considered *Janus* only in the context of unions. *See Creed v. Alaska State Emps. Ass'n*, 472 F. Supp. 3d 518, 520–22 (D. Alaska 2020); *Woods v. Alaska State Emps. Ass'n*, -- F. Supp. -- (D. Alaska 2020); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 999–1000 (D. Alaska 2019) (Sedwick, J.). The Supreme Court, Ninth Circuit, and judges in this district have, accordingly, confined *Janus*'s application to instances of compelled *subsidization* of private speech. It has no bearing on this case.[45]

\* \* \* \*

Dr. Blanford and Dr. Bellville prefer stirring statements from a hodgepodge of free speech cases over focused analysis of the resignation request under *Pickering* and its progeny. The *Pickering* analysis cannot sustain their claims, and inapposite cases do not relieve the burden of showing how a public employee has a constitutional right to refuse a job-related request.

### b. The Resignation Request Did Not Compel Speech.

Even if a public employee *could* raise a compelled speech claim, neither Dr. Blanford nor Dr. Bellville has one here. As Defendants explain in their own summary judgment motion, the State offended no constitutional principle by requiring resignations and asking for stated interest in continued employment.[46] This is because (1) the State requested no public statement from Dr. Blanford or Dr. Bellville; (2) the State was entitled to ask Dr. Blanford and Dr. Bellville to take an action, even one requiring words;

---

[45] Dr. Blanford and Dr. Bellville make two additional attempts to ignore the signposts of public employee speech cases, citing *Perry v. Sindermann*, 408 U.S. 593 (1972), and *Agency for International Development v. Alliance for Open Society International, Inc.*, 570 U.S. 205 (2013). Neither case warrants much discussion. *Perry* declined to reach the merits of the free speech claim, holding that a non-tenured faculty member could bring such a claim. *Perry*, 408 U.S. at 597–98. *Agency for International Development* concerned circumstances in which the government may condition government grants. *Agency for Int'l Dev.*, 570 U.S. at 221. The general statements from those cases do not provide rules for deciding this one.

[46] *See* Dkt. 55 at 11–16.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)        Page 13 of 19

Case 3:19-cv-00036-JWS    Document 61    Filed 05/14/21    Page 13 of 19

and (3) insofar as the State requested a statement at all, it requested that Dr. Blanford and Dr. Bellville express interest in serving Alaskans, something they *wished* to express.

<u>First</u>, when the public would not reasonably attribute a government message to the speaker, there can be no compelled speech. *New Doe Child #1 v. Cong. of the U.S.*, 891 F.3d 578, 593–94 (6th Cir. 2018). The compelled speech doctrine protects people against required "dissemination of an ideological message . . . in a manner and for the express purpose that it be observed and read by the public." *Wooley*, 430 U.S. at 713. This is why compelling display of a motto on a license plate "in public view" is unconstitutional, *id.* at 715, but compelling use of currency "carried in a purse or pocket and . . . not . . . displayed to the public" is not, *id.* at 717 n.15. A compelled speech claim requires an appearance that the speaker endorses the government message. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 565 n.8 (2005). Publicity is key.

Here, any response to the resignation request was purely private. Had either Dr. Blanford or Dr. Bellville submitted the resignation, they would have appeared to their neighbors just as any other employee, including employees who did not receive the memo requesting resignations. It is true that private speech may occasionally be imbued with public concern. *Connick*, 461 U.S. at 146. But this presupposes there is speech at issue, a step a court may skip over when an employee is discharged for what he said. In this case, Dr. Blanford and Dr. Bellville were discharged for what they failed to do, and they must first show that the resignation request implicated speech. For this to be so, the government must have requested public expression of a message. It did not.

<u>Second</u>, compelled speech claims require compulsion to communicate some discernable "message." *Jacobs v. Clark City Sch. Dist.*, 526 F.3d 419, 438 (9th Cir. 2008). The requested form resignation letter only contingently dissolved a contractual relationship. It lacked any "connection to the marketplace of ideas and opinions, whether political, scientific, aesthetic, or even commercial." *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 637 (7th Cir. 2005). In this way, it was like an order to sell stock, *id.*, or words spoken to solicit a client, *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 457 (1978). It

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)　　　　　　　　　　Page 14 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 14 of 19

lacked First Amendment salience, even though it was "in part initiated, evidenced, or carried out by means of language." *Id.* at 456. So, too, the form letter's second paragraph, which evidenced only a willingness to enter a contract. For free speech purposes, this was indistinguishable from words of resignation.

Even if resigning expressed a message, it was not a "particularized" message discernable to a reasonable observer. *See Jacobs*, 526 F.3d at 438 ("[T]he likelihood that a person viewing Dresser wearing his mandated school uniform would have understood Dresser to be conveying a message of conformity is extremely small."). Dr. Blanford and Dr. Bellville have ignored their obligation to present "evidence (for example, surveys) suggesting that anyone (other than [themselves]) would be likely to view" resignation "as communicative or expressive." *Troster v. Pa. State Dep't of Corrs.*, 65 F.3d 1086, 1092 (3d Cir. 1995). The legislators' letter they describe indicates what political hay could be made out of the request, not what it meant to a reasonable observer. And Mr. Carmichael testified that even after hearing Dr. Blanford and Dr. Bellville out on the resignation issue, he did not agree with them that the request amounted to a loyalty pledge.[47] Dr. Blanford and Dr. Bellville cannot state a claim for compelled speech without evidence of what a reasonable observer would perceive the compelled message to be.

Third, even if the requested form letter had expressive content, it was only that the sender wished to continue in his position. Dr. Blanford and Dr. Bellville *agreed* with that message. This defeats their claim because "to state a proper compelled-speech claim, a plaintiff must object to a message conveyed by the speech he is required to utter." *Cressman v. Thompson*, 798 F.3d 938, 961 (10th Cir. 2015). Dr. Blanford and Dr. Bellville each wrote letters expressing affinity for their positions at about the time they were requested to resign, with Dr. Blanford saying, "I would like to continue as Director of Psychiatry," and Dr. Bellville saying, "It is an honor to serve the people of

---

[47] Dkt. 54 at 9.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)  Page 15 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 15 of 19

Alaska and the patients who require care at API."[48] Accordingly, they state no First Amendment claim based on the requested statement of interest in continued employment.

**B.     Dr. Blanford and Dr. Bellville Had No Right to Refuse the Resignation Request Under the Alaska Constitution.**

Dr. Blanford and Dr. Bellville offer no reason the Court should treat their claims under the Alaska Constitution any differently than their First Amendment claims. True, the Alaska Constitution sometimes sweeps more broadly in protecting speech than does the Federal Constitution. *See Alaskans for a Common Language v. Kritz*, 170 P.3d 183, 203 (Alaska 2007). But Alaska's public employee free speech cases rely heavily on federal law. *See Wickwire v. State*, 725 P.2d 695, 700 (Alaska 1986); *State v. Haley*, 687 P.2d 305, 312 (Alaska 1984); *City & Borough of Sitka v. Swanner*, 649 P.2d 940, 943–45 (Alaska 1982).

To the extent Alaska law differs from federal law in addressing public employee free speech rights, it does so by grounding public employees' rights in the policy of "encourag[ing] employee speech about the operations of government since employees often are in the best position to offer informed opinions." *Wickwire*, 725 P.2d at 703; *see also Alaskans for a Common Language*, 170 P.3d at 203–04. This state-law basis for public employee free speech rights does not jibe with refusal to speak. Dr. Blanford and Dr. Bellville conveyed no information by refusing to resign. Accordingly, their state-law claims suffer the same defect as their federal claims.

**C.     Because Dr. Blanford and Dr. Bellville Fail to Establish a Rights Violation, They Are Entitled to Summary Judgment on No Cause of Action.**

Dr. Blanford and Dr. Bellville's summary judgment motion does not state which of their causes of action they seek summary judgment on, collapsing their entire case into "their First Amendment claim,"[49] and elsewhere referring to "their claims that Defendants violated their rights under the First Amendment of the United States

---

[48] Dkt. 55 at 6 (quotations omitted).

[49] Dkt. 54 at 35.

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)                                Page 16 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 16 of 19

Constitution and Article I, § 5 of the Alaska Constitution."[50] Dr. Blanford and Dr. Bellville are not entitled to summary judgment on any cause of action they may predicate on an asserted violation because, as explained above, there was no free speech violation.

Their request for summary judgment should also be denied for the independent reasons that they fail to address—let alone satisfy—the requirements of 42 U.S.C. § 1983 or Alaska law's implied covenant of good faith and fair dealing.

### 1. Dr. Blanford and Dr. Bellville's Section 1983 Claim Fails.

Any section 1983 damages claim fails against the State because the Eleventh Amendment permits only "decrees which by their terms [are] prospective in nature." *Edelman v. Jordan*, 415 U.S. 651, 668 (1974). It fails against Governor Dunleavy and Mr. Babcock because each are immune from damage awards in their official capacities, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989), and enjoy qualified immunity from suit in their individual capacities, *Wood v. Moss*, 572 U.S. 744, 748 (2014).

As explained in Defendant's summary judgment motion,[51] to overcome qualified immunity, Dr. Blanford and Dr. Bellville bear the burden to establish, in addition to a violated right, that "the right at issue was 'clearly established' at the time of [the] alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). This requires a controlling case or a "consensus of cases of persuasive authority." *Kramer v. Cullinan*, 878 F.3d 1156, 1163 (9th Cir. 2018) (quotations omitted). And it requires that this controlling case or consensus show "the violative nature of the *particular* conduct." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (quotations omitted). The general principles Dr. Blanford and Dr. Bellville assert in their summary judgment motion are inadequate to meet this burden. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018). They must provide a

---

[50] Dkt. 54 at 1.

[51] Dkt. 55 at 18–20

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)     Page 17 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 17 of 19

case with "similar circumstances," *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam), making the right "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it," *Kisela*, 138 S. Ct. at 1153 (citation omitted). Because determination of policymaker status is fact-dependent, even if Dr. Blanford were not a policymaker, there is no clearly established pre-existing law saying so. And because public employee compelled speech cases are vanishingly rare, no existing case law gave Governor Dunleavy and Mr. Babcock "fair notice" of any constitutional salience to the resignation request. *See Kisela*, 138 S. Ct. at 1152. They are entitled to qualified immunity.

### 2. Dr. Blanford and Dr. Bellville's State-Law Claims Fail.

The Alaska law claims also fail. There is no implied "private cause of action for damages under the Alaska Constitution," except in circumstances not at issue here. *Larson v. State Dep't of Corr.*, 284 P.3d 1, 10 (Alaska 2012) (quotations omitted). Accordingly, Dr. Blanford and Dr. Bellville can only assert a claim for violation of the implied covenant of good faith and fair dealing. But their motion fails to name this cause of action or to cite any case describing it. Suffice it to say that this state-law claim, like the rest of Dr. Blanford and Dr. Bellville's claims, fails for want of a constitutional violation.[52]

## IV. CONCLUSION

Dr. Blanford and Dr. Bellville took the resignation request for more than it was. They drew a line in the sand, refusing requests to return to work on behalf of the patients they said were their priority. Now they seek summary judgment by placing themselves in the position of a string of sympathetic constitutional plaintiffs—school children who faced suspension rather than violating their faiths to salute the flag, college professors who hazarded perjury prosecution if they taught the Communist Manifesto, and low-level

---

[52] *See* Dkt. 55 at 21–23 (explaining in more detail the deficiencies in the claim for violation of the implied covenant of good faith and fair dealing).

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)  Page 18 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 18 of 19

employees punished for supporting the wrong political party. Courts have met these circumstances with stirring words—and rightly so. But Dr. Blanford's and Dr. Bellville's case is more pedestrian and requires careful balancing of the State's needs as employer against the rights of individuals. The analysis to do this is long-standing. Because Dr. Blanford was a policymaker and the State was permitted to request a job action with no expressive content, precedent forecloses Dr. Blanford and Dr. Bellville's claims. Their request for summary judgment should be denied.

DATED: May 14, 2021.

LANE POWELL LLC
Attorneys for Defendants


By  s/ Michael B. Baylous
    Brewster H. Jamieson, ABA No. 8411122
    Michael B. Baylous, ABA No. 0905022

I certify that on May 14, 2021, a copy of
the foregoing was served electronically on:

Stephen Koteff, skoteff@acluak.org
Joshua Decker, jdecker@acluak.org

s/Michael B. Baylous

Defendants' Opposition to Plaintiffs' Motion for Summary Judgment
*Blanford, et al. v. Dunleavy, et al.* (Case No. 3:19-cv-00036-JWS)                                    Page 19 of 19

Case 3:19-cv-00036-JWS   Document 61   Filed 05/14/21   Page 19 of 19